COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and AtLee
Argued by teleconference

PUBLISHED

COMMONWEALTH OF VIRGINIA

v.      Record No. 1208-20-4

MALACHI MORGAN THOMAS

OPINION BY
JUDGE ROBERT J. HUMPHREYS
APRIL 6, 2021

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Richard E. Gardiner, Judge

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

No brief or argument for appellee.


On October 1, 2020, Malachi Morgan Thomas ("Thomas") was charged with one count

of rape, in violation of Code § 18.2-61, and three counts of forcible sodomy, in violation of Code

§ 18.2-67.1.  On October 21, 2020, after a hearing, the Circuit Court of Fairfax County ("the

circuit court") admitted Thomas to bail.  The Commonwealth appealed, arguing that the circuit

court abused its discretion by doing so.

## I.  BACKGROUND

On July 17, 2020, Thomas began communicating in a group chat with two

sixteen-year-old females,[1] A.M. and A.R.A, through a social media application.  Thomas,

purporting to be a member of a criminal organization, requested nude photos from A.M.  When

she declined, he threatened her asserting that he had "fucked up other individuals" who failed to

---

[1] The Commonwealth's proffer regarding A.M.'s age was inconsistent; the prosecutor
initially stated that A.M. was sixteen at the time she met Thomas but later said she was
seventeen.  The Commonwealth did not clarify which age was accurate.

comply with his wishes. A.M., fearing for her safety, eventually complied with his requests for photographs of her genitals. Thomas then told A.M. that he had a "task" for her that required her to meet in person with one of the members of his "organization."

On July 20, 2020, Thomas and A.M. met in person at an apartment complex in Fairfax, Virginia. Thomas told A.M. that she had to "suck his dick." A.M. began to cry and he told her that if she did not calm down, they would both be killed. Thomas pulled A.M. by the arm into some bushes and trees, grabbed her hair, and pushed her onto her knees, then pulled her jaw open and forced his penis into her mouth. Thomas filmed the assault and told A.M. to stop crying because it would look bad on camera and he had to "do this" to her. A.M. continued to cry and tell Thomas that she did not want to continue. In response, Thomas grabbed her by the shoulders, turned her around, pushed her head down, and bent her over. Thomas then pulled A.M.'s pants off and raped her.

Later that day, A.M. reported to the Fairfax County Police Department that she had been sexually assaulted by an unidentified male. Detective C.C. O'Malley ("Detective O'Malley") began an investigation and successfully linked Thomas's Snapchat username to his phone number. During the investigation, Detective O'Malley was in contact with the Prince William County Police Department and, with their help, found the other teenage female, A.R.A., who had been in the group chat with A.M. and Thomas.

A.R.A. told the detectives that she first communicated with Thomas via social media on July 1, 2020. Thomas told A.R.A. that he was going to have her raped and killed if she did not comply with his demands for photographs of her exposed breasts and genitals. Fearing for her life, A.R.A. complied. Thomas then said that he wanted her to meet him in person. When A.R.A. said that she was scared, he threatened to harm her parents. On July 2, 2020, Thomas met A.R.A. at a parking garage and commanded her to get down on her knees, telling her that

they would both die if she refused. Thomas physically compelled A.R.A. to perform fellatio on him, placing his hand on her back and head and forcing his penis into her mouth until he caused her to choke. When a car drove by, Thomas told A.R.A. to stop and led her into a secluded area in a different parking garage. He forced her to resume fellatio on him, during which he instructed her to take off her shirt. Thomas eventually ejaculated into her mouth, then took a photograph of A.R.A. with semen in her mouth and her breasts exposed. Following that encounter, on July 14, 2020, Thomas again forced A.R.A. to perform fellatio on him in a parking garage.

On October 1, 2020, a search warrant was obtained and executed for the residence where Thomas was staying, whereupon he was arrested and interviewed by police. Thomas admitted to detectives that he sent threatening messages to women in order to obtain nude photographs. He confessed to threatening and forcing both A.M. and A.R.A. to meet and perform sexual acts on him. Additionally, Thomas admitted that he had threatened at least thirty other people for nude photographs via social media.

Thomas was arraigned and held without bond. On October 16, 2020, Thomas submitted a motion to admit him to bail and set a reasonable bond and on October 19, 2020, the circuit court heard arguments on Thomas's motion. This case was submitted to the circuit court at the bail hearing entirely on the proffers of counsel as to the evidence they would present.

Thomas proffered that he was on probation in Norfolk and had a detainer in Prince William County, where he was scheduled to be arraigned on October 22, 2020. The Commonwealth asserted that Thomas had charges pending against him in Prince William County for another sexual offense when he allegedly assaulted A.M. and A.R.A. The Commonwealth alleged that Thomas had confessed to threatening a third, unidentified juvenile female in Prince

William County in July 2020 for nude photographs and had also attempted to meet with her to perform sexual acts.

Neither party was certain of Thomas's Norfolk probationary status. Notably, the Commonwealth stated, without objection, that Thomas had been subject to a total ban on social media as a condition of probation in Norfolk and that he violated the ban by talking to A.M. and A.R.A. on Snapchat.

In support of his motion for bail, Thomas asserted that he was a full-time student at Old Dominion University with a 3.8 grade point average, was a lifelong resident of Virginia with no history of failure to appear in court, and that his mother could provide a stable living environment for Thomas if he were released to bail. Thomas also contended that a GPS monitor could reasonably assure the circuit court of his location.

In response, the Commonwealth stated that Thomas had been "extremely difficult to locate." A Portsmouth police report indicated that Thomas's mother reported him as a runaway in December 2019. Additionally, upon searching Thomas's phone, police found that Thomas had searched the Internet for "ten hideouts for fugitives" and "If I wanted to leave the U.S., what country would I flee to?"

After hearing the evidence, the circuit court stated, "I am more concerned about the danger to the community. I think there is some likelihood of flight but that's not my greater concern." The circuit court inquired if Thomas had a passport, which he did. The circuit court then stated, "What I'm really concerned about, more than anything else, is Internet access and what he's doing with that and being a risk to the community."

Without further comment, the circuit court proceeded to set bail at $25,000 with surety. Thomas was also ordered not to have any devices with internet access, to surrender his passport,

possess no firearms, submit to GPS monitoring, and not have any contact with anyone under the age of eighteen except his siblings.

This appeal by the Commonwealth followed.[2]

## II.  ANALYSIS

### A.  Standard of Review

On appeal, we review the circuit court's decision whether to grant bail for abuse of judicial discretion.  See Barnes v. Commonwealth, 72 Va. App. 160, 166 (2020).  "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance."  Lawlor v. Commonwealth, 285 Va. 187, 212 (2013) (quoting Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008)).  A court always abuses its discretion when it makes an error of law.  See e.g. Warnick v. Commonwealth, 72 Va. App. 251, 263 (2020).  A court can also abuse its discretion in three other ways:  (1) by failing to consider a relevant factor that should have been given significant weight, (2) by considering and giving significant weight to an irrelevant or improper factor, and (3) when the circuit court, while weighing "all proper factors," commits a clear error of judgment.  See Lawlor, 285 Va. at 213 (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011)).

---

[2] The Commonwealth failed to file a notice of filing of the transcripts as required by Rule 5A:8(b)(1).  Rule 5A:8(b)(4) states that in the event of such failure, the transcripts may be stricken from the record if the appellee establishes that the appellant's non-compliance materially prejudiced them.  See Rule 5A:8(b)(4).  Thomas neither objected to the Commonwealth's error nor filed a brief; therefore, we consider the issue waived.

B.  Whether the Circuit Court Erred in Setting Pre-Trial Bail

Code § 19.2-120(A) sets forth the requirements for admission to bail in the Commonwealth. See Code § 19.2-120(A).  Under that statute, persons in custody should be admitted to bail unless there is probable cause to believe that the defendant will not appear for court or that his liberty will constitute an unreasonable danger.  See id.  However, the statute also states that:

> The judicial officer shall presume, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the person or the safety of the public if the person is currently charged with:
>
> 1. An act of violence as defined in § 19.2-297.1;
>
> 2. An offense for which the maximum sentence is life imprisonment or death.

Code § 19.2-120(B).

Put simply, if this presumption against bail applies, the burden of persuasion shifts to the defendant to rebut the presumption that there is no condition or combination of conditions that will reasonably assure the defendant's appearance at future court proceedings or prevent future criminal activity while awaiting trial.

Forcible sodomy and rape are both defined as acts of violence under Code § 19.2-297.1. Additionally, both charges are felonies punishable by possible life sentences.  See Code §§ 18.2-61, 18.2-67.1.  Because Thomas's crimes fell under the purview of Code § 19.2-120(B), a presumption against bail applied to him.  See Code § 19.2-120(B); see also Shannon v. Commonwealth, 289 Va. 203, 204 (2015).

In determining whether the presumption against bail has been rebutted by a defendant, circuit courts are required to consider:

> 1. The nature and circumstances of the offense charged;
>
> 2. The history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

community ties, past conduct, history relating to drug or alcohol abuse, criminal history, membership in a criminal street gang as defined in § 18.2-46.1, and record concerning appearance at court proceedings; and

3. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

See Code § 19.2-120(E).

However, when the presumption against bail applies, our Supreme Court has made it clear that it is not sufficient that an appellate court assume the presumption was rebutted simply by virtue of the fact that a circuit court admitted a defendant to pre-trial bail. In Shannon, the Supreme Court of Virginia reviewed a factually similar bond appeal by the Commonwealth. See 289 Va. at 204. In that case, the circuit court set bail for Shannon, who was accused of forcible sodomy and abduction with intent to defile, both violent offenses punishable by possible life sentences. See id. Shannon was also a registered sex offender. See id. at 205. After the circuit court heard the proffers of counsel, the only explanation it gave regarding its ruling was, "Under the circumstances of this case[,] bond will be set at $60,000 cash or corporate surety." Id. at 206 (alteration in original). This Court reversed the circuit court's decision because it was "impossible to determine from the circuit court's ruling what, if any, consideration or weight the circuit court might have given to the statutory presumption against bail, the effect of Shannon's presence on the sex offender registry, and his pending charges involving a repeat sexual offense involving violence." See id. at 207. The Supreme Court of Virginia affirmed, holding:

> There is no general requirement that trial courts must state for the record the reasons underlying their decisions. Nevertheless, in light of the public policy underlying the laws providing for prompt and meaningful review of bail decisions, a court making such a decision has *a duty to articulate the basis of its ruling* sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion.

Id. at 206 (emphasis added).

In the present case, the circuit court was required by Code § 19.2-120(E) to evaluate the nature and circumstances of Thomas's offenses, his personal history and ensuing characteristics, and the nature and seriousness of the danger posed by his potential release. However, the circuit court made very few statements before ruling that Thomas was granted bond. Regarding the basis of its decision, the circuit court stated only, "I am more concerned about the danger to the community. I think there is some likelihood of flight but that's not my greater concern" and "[w]hat I'm really concerned about more than anything else is internet access and what he's doing with that and being a risk to the community." Immediately afterward, the circuit court granted Thomas bond.

Here, as in Shannon, the brief statements made by the circuit court cannot accurately be said to "articulate the basis of its ruling sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion." 289 Va. at 206. The circuit court gave no reasons to *support* its decision to grant pre-trial bond. We cannot ascertain what consideration or weight—as is required by Code § 19.2-120—the circuit court may have given to the fact that similar charges were pending against Thomas in other jurisdictions or that the nature and circumstances of Thomas's offenses were violent, calculated, and reveal a pattern of planned manipulation and sexual assault on minors. See Code § 19.2-120 ("The judicial officer shall consider the following factors . . . the nature and circumstances of the offense charged; the history and characteristics of the person . . . the nature and seriousness of the danger to any person or the community that would be posed by the person's release.").

Shannon additionally held that this Court was "required to look to the record made in the circuit court to ascertain whether the conclusion the circuit court reached had factual support." 289 Va. at 207. We have done so.

Thomas purported to be a member of a criminal organization and threatened minors with harm to them and their families if they did not send him nude photographs and admitted doing so to approximately thirty victims. He committed forcible sodomy on three separate occasions. On the third instance, Thomas was accused of raping a teenage girl. His actions arguably show a pattern of escalation that grew from online harassment into bodily sexual assault. Not only did Thomas fully confess to these alleged crimes, but he used social media as a tool to commit them when he had already been forbidden by another court from accessing the internet. Thomas was also apparently considering fleeing to a foreign country that might serve as a "hideout for fugitives."

At his bail hearing in circuit court, Thomas only proffered that he was on probation and had been barred from internet access at the time of these offenses, was a student, a resident of the Commonwealth, and could live with his mother if released. He proffered no evidence rebutting the presumption that no conditions of bail could assure his future court appearances and the safety of the community, only arguing that conditions of bail could be fashioned assuring both.

Despite the significant evidence favoring the denial of bail, the lack of evidence favoring release on bail, and the presumption itself, the circuit court made no factual findings as required by Shannon and Lawlor to support its conclusion that Thomas had borne his burden of persuasion that he was neither a flight risk nor danger to the public and should be released on bail. See 289 Va. at 206; 285 Va. at 213. For these reasons, we reverse the circuit court's order granting Thomas pre-trial bail and remand this case to the circuit court for "enforcement" of our judgment in this case as directed by Code § 19.2-124(A).

## III.  CONCLUSION

Accordingly, the judgment reflected by the order entered by the circuit court on October 21, 2020, is reversed and the case is remanded with direction that the order of that court granting bail be vacated.

Reversed and remanded.